COOPER *against* RANKIN administrator of RANKIN.

IN ERROR.

*Philadelphia, Saturday, July 17.*

THIS was an action in the District Court of *Philadelphia*, upon a promissory note drawn by *Cooper* the defendant below, in favour of *Rankin* the intestate, for 466 dollars 67 cents, and payable in four months from the 13th of *November* 1804. The pleas were *non assumpsit*, payment, and a release, to which last plea the plaintiff replied *non est factum*.

*It seems that an attorney who is not authorised by writing un-der seal, cannot execute a deed of release under seal, in the name of his principal; but if he does execute such a deed, though it cannot be given in evidence*

Upon the trial of the cause, the defendant proved, that *Rankin*, in the beginning of the year 1805, sailed upon a voy-

*against the principal under the issue of non est factum, yet it may be under the issue of non assumpsit as amounting to an agreement not to sue.*

(*a*) *Ambl.* 82.          (*b*) 3 *Atk.* 634.

age to the *Isle of France*, as the supercargo of *Lewis Crousillat*, and left *Crousillat* to settle and adjust all his concerns, during his absence; that he returned from that voyage in the summer or fall of 1806, sailed in two or three months for *Batavia*, and died abroad.

He then offered in evidence, after proving *Crousillat's* handwriting, an instrument dated the 27th of *May* 1805, signed and sealed " *L. Crousillat*, attorney to *Alexander Rankin*," but without any subscribing witnesses, and purporting, in consideration of an assignment of the same date by *Cooper* of all his property in trust for his creditors, to release and quit claim to him, his heirs &c. all actions, suits, debts, sums of money, and demands in law or equity, which the parties had against him from the beginning of the world to the day of the date.

This evidence was overruled by the Court, who sealed a bill of exceptions.

*Sergeant* and *Hallowell* for the plaintiff in error. The Court below were of opinion that an authority under seal was necessary to execute the release under seal, and that there was no proof of a delivery of the release by the attorney. As to the first objection, it applies only to the particular issue of *non est factum;* the release was evidence under the issue of *non assumpsit*, to prove an agreement not to sue. As to the second, there was no subscribing witness to the release. None was necessary. And where there is none, proof of the handwriting of the obligor is strong evidence of sealing and delivery, and should have gone to the jury. *Clark* v. *Sanderson* (a), *Peak Ev.* 100.

*Phillips* for the defendant in error. Delivery is essential to a deed, and there was no proof of it whatever. *Bull. N. P.* 254. If delivered, the attorney had no authority to execute it; for an attorney cannot execute a deed for his principal, without an authority by deed. 3 *Bac. Abr.* 408., 1 *Bac. Abr.* 183. *Authority.*, *Co. Litt.* 48. *b.*, 2 *Roll. Abr.* 8., 1 *Salk.* 96., *Brownl.* 94., *Yarborough* v. *Beard* (b), 1 *Bac. Abr.* 287. *Attorney.*, *Co. Litt.* 52., 8 *Co.* 58., *Hob.* 9., *Roll. Rep.* 3. The only question below, was, whether the release was evidence under the issue of *non est factum.*

(a) 3 *Binn.* 192.          (b) *Taylor's N. C. Rep.* 25.

TILGHMAN C. J. If we were only to consider now, the question which the District Court is said to have. decided, that is to say, whether an agent or attorney not authorised by deed, can execute a deed in the name of his principal, I am inclined to think I should agree with that Court, because I do not see how the stream can rise higher than its source. I refrain however from giving a positive opinion on that point, as it is unnecessary. The writing was good evidence on a plea of *non assumpsit*, because, granting it not to be a deed, it might operate as an agreement in writing not to prosecute an action on the note, and this agreement was founded on good consideration, on a conveyance executed by *Cooper*, of all his estate, for the benefit of his creditors. From the circumstance of there being no subscribing witness, I think it probable that the writing never was sealed and delivered; but after proof of the hand writing, it ought to have gone to the jury in the character I have mentioned. I am therefore of opinion that the judgment should be reversed, and a *venire facias de novo* awarded.

YEATES J. gave no opinion, having been sick during the argument.

BRACKENRIDGE J. The use of the seal was originally the distinguishing the person; for every individual was supposed to have his peculiar seal. The act of impressing with a seal,. importing greater deliberation, might also be considered as adding to the evidence of its being the act of the party. It was a symbol of solemnity, which gave a greater effect to the instrument. This may be considered as a second use of the seal. There could be no other use in impressing with the *tooth;* for when the teeth were gone, there was nothing with which to compare the impression. Yet this species of sealing would seem to have been in use; for in an old deed by *William* the Conqueror to a certain *Rawdon*, an ancestor of the present earl of *Moira*, and which is in old *English* verse, we have the attestation of sealing in these words:

" *In token that this thing is sooth,*
" *I bite the white wax with my tooth.*"
*European Magazine for* 1811.

1813.

COOPER
v.
RANKIN.

1813.

COOPER
*v.*
RANKIN.

But both these uses have in a great degree come to nothing. For as to the first, no person is distinguished by a seal, or supposed to be so distinguished. And as to evidence of deliberation, it amounts to nothing, since the circumflex of a pen has come to be considered as equipollent to wax, or to a wafer impressed with a seal. Not even a circumflex or circle is thought necessary, but some curve of the parabola, or something like it, in a flourish or scrape of the pen. It was a bold advance in thus reducing the symbol to a shadow, and I am not able to trace when or where it began. But it would be going a step beyond, to dispense with it altogether, and to say that even the name shall not remain. For though it is a maxim that when the reason of a thing ceases, the law with regard to it ceases also, yet this image of technical distinction is so interwoven with our rules of law, that I am not able to say that the judiciary power can restrain or abridge. The legislative authority has referred to it in acts of assembly, and made it a part of the building. The assignment of an instrument under seal, that of a bond, must be by seal. The limitation of time in the case of a note of hand merely, is different from that of a sealed obligation. Awards must be under seal; certificates of justices of the peace, though they have no seal, &c. &c. &c. The word seal has crept into the acts of the legislature in many cases without meaning or use. It was introduced as a term of course, or supposed to have some magic in it, which baffled the examination. Might it not be advisable by an act of the legislature to reduce the necessity of sealing to *corporate bodies*, who have seals, or are supposed to have them. It is the *hand writing* of an individual that must be proved, and not his seal; and why then continue the necessity of adding something that bears the name? The mischief is, that individuals do not always know where to use seals, or where they may do more harm than good; as for instance in the case before us, where the attorney thought he was making sure doubly sure, by adding a seal. And the fact is, that his authority not being given him by seal, he had no right to put the seal of the principal. There was no necessity for a seal, for it was but a chattel interest that was to be acted on, and had no relation to real estate. But the attorney has put the seal of his principal, and his authority, upon the evidence, appears to have been by parol. The defendant by

his counsel in his pleading might have demurred to the replication of *non est factum* to the plea of release, and shewn that in this case of a chattel interest, there being no relation to real property, it was not necessary that the release should be by deed. The seal in that case would not come into view, and might be rejected as surplusage. But this was not done, but issue taken on the plea.

But as the record comes to us, *non assumpsit* is pleaded, and issue joined upon this plea. Under the plea of *non assumpsit* a release may be given in evidence. 1 *Selwyn's Nisi Prius* 106. This I presume, being laid down generally, may be with or without seal. Surplusage does not vitiate; and the putting the seal was unnecessary to release a right of a chattel interest, though on the issue of *non est factum* it might be necessary to show a seal in order to support the plea. In *assumpsit* the defendant is allowed to give in evidence any thing that will discharge the debt. *Bull. Ni. Pri. (old ed.)* 129. If any plea that goes to the whole of the plaintiff's cause of action, be found for the defendant, it will suffice to bar a recovery. This is a principle for which I need not cite authorities. I incline therefore to reverse the judgment.

*Judgment reversed.*