JOHN WHELAN, Plaintiff in Error, *vs.* OWEN SHERRON.

*Certiorari.*

1. Entering security, on an appeal, is a matter of record.

2. An authority, to bind one as security on an appeal, can be given only under seal: and *dubitatur*, whether it can be given at all.

3. In a Justice's Court, a security on appeal, not signing or sealing the recognizance, is not bound by an entry of his securityship, made by the magistrate, on his verbal authority.

In obedience to the writ of certiorari, issued in this cause, Leonidas Wylly, Esq. a Justice of the Peace in and for the County of Chatham, certifies to this Court, the following facts and proceedings, as had before him, in the Court below—viz: That, on the second day of November, 1842, he was called upon, by Justice James H. Wade, and requested to attend, at his office, that afternoon, to preside, in his stead, and try a cause, which had been returned to said Justice Wade's Court, on the ground of illegality of execution—That he did attend, at the hour set apart for the hearing of the case, and did preside, and pass upon the same—That the case was Owen Sherron *vs.* John Whelan, security of William Patterson; in which case, the defendant had filed an affidavit of illegality to the execution, which had been issued against him, on an appeal, on the ground, first: that no appeal had ever been entered, by the original defendant, William Patterson; second: that if such appeal was entered, in conformity to law, he, the said John Whelan, *never became the security of the said William Patterson, either in fact, or in Law.*

In support of this affidavit of illegality, the docket of Justice Wade's Court was introduced in evidence, before said presiding Magistrate, by which it appeared, that the name of John Whelan had been written thereon, as the security on an appeal, in the case of Owen Sherron *vs.* William Patterson.

[Whelan *vs.* Sherron.]

William Patterson was then called, and introduced as a witness, on the part of the complainant, to prove that the name of John Whelan, as it appeared on the said docket of the said James H. Wade, was not the hand writing of the said John Whelan. This testimony the said Justice overruled, as incompetent, on the ground of his being a party to the record, and interested in the result. The defendant, or complainant, then introduced John Jones, as a witness, who proved that the name of John Whelan, as it appeared on said docket, was not the hand writing of the said John Whelan.

The plaintiff in execution then introduced, as a witness, the Magistrate, James H. Wade, before whom the original cause was tried.— He testified, that the said John Whelan did call on him, at his office, and tell him, that he, Whelan, had called, for the purpose of becoming the security of the said William Patterson, for an appeal, in the aforesaid case, and that he, Whelan, did request him, the said James H. Wade, Esq. to sign his name to the docket, as the security of said William Patterson, which he said he did do, agreeably to said request.

This was all the testimony, which was introduced, on both sides ; and the presiding Magistrate certifies to this Court, that, upon this testimony, he decided that the execution was legal, and should be enforced.

Exceptions having been taken, to this decision of the Magistrate, by the counsel of the said John Whelan, as being contrary to Law, and he having complied with the statute; applied to this Court, for the writ of Certiorari, which was granted to him.

And now the question, which is presented, for the consideration and decision of this Court, under the foregoing facts and proceedings, in the Court below, is, has, or has not, the Magistrate, in overruling the defendant's affidavit of illegality, and in sustaining the execution, issued against him, as security on said appeal, on principles of Law, committed error, under the facts, above stated? This question, in the present case, becomes important and interesting, in point of Law, inasmuch as it is suggested to this Court, that a practice prevails, with some Magistrates of this county, of signing the names of individuals, upon their docket, where an appeal has been demanded,

[Whelan *vs.* Sherron.]

upon the authority of loose and verbal declarations of such individuals, and binding them, for the payment of the eventual condemnation money, on the appeal, without any authority in writing, for that purpose—a practice, which, if it in fact exists, to say the least of it, is of dangerous tendency, as it must inevitably lead, either to gross fraud, or perjury. We have a striking instance of this, in the case now before the Court. The defendant, Whelan, in his affidavit of illegality, under oath, denies that he ever gave the Magistrate, James H. Wade, any authority to sign his name, as security on said appeal ;—on the other hand, the Magistrate as expressly states, under his oath, that such authority was given, by the said John Whelan, to him, personally. Both cannot be right. It therefore becomes important, under the facts above stated, to enquire, first : admitting the fact, that such parol authority was given, by the said John Whelan, to the said James H. Wade, to sign his name, on the docket of said Wade, as a security on the Appeal of William Patterson ; whether the act done, as it appears on the face of said docket, has been done in such a manner, as can legally bind the said John Whelan, for the eventual condemnation money ; or, in other words, whether the act, as done, purports, on its face, to have been done, in pursuance of such authority. For, I apprehend, it is a well settled principle, that where an act, done for another, is done in pursuance of a previous written, or parol, authority, it must appear, upon its face, to have been done, in pursuance of such authority, or it will not bind the principal.—*Story on Agency*, 137. If this does not appear, the strong presumption of fact would be, that no such authority had been previously delegated. Second : Whether, in point of Law, a power or authority, to sign the name of another, as a security upon an appeal, can be delegated by parol ; or whether, from the very nature and dignity of the contract, that power must not be delegated, by writing, and under seal, in order to make the act binding, and legal.

Now, in reference to the first point above stated, I would simply remark, that, from the return, made to me by the presiding Magistrate, in the Court below, it does not appear, that the name of John Whelan, as written on the face of the docket of the said James M. Wade, and as security on the Appeal of the said William Patterson, is written thereon, by any person, claiming to act, as the attorney of the said Whelan. The act, on its face, purports to be the individu-

[Whelan *vs.* Sherron.]

al act of the said Whelan, and not his act, by virtue of any power, or authority, delegated by him, to any person, for that purpose; and, as already remarked, such being the fact, the strong presumption, in Law, would be, that no such authority had been previously given, or delegated, by him, to any person. It may, therefore, well be questioned, as it seems to me, whether the presiding Magistrate, in the Court below, when he received the testimony of the said James H. Wade, for the purpose of adding to, and explaining, the facts, as they were apparent, on the face of that record, did not commit error in Law.

But, without placing this decision, on that point, as ground of error, there is another, and much more important question, involved, under the facts of the case, which demands serious consideration. It is this: Whether, in point of Law, a power, or authority, to sign the name of another, as a security upon an appeal, can be delegated by parol; or whether, from the very nature and dignity of the contract, such authority, if delegated, must not be delegated, by writing, under seal, in order to make the act valid, and binding, upon the principal, or security. This question is one of importance, whether considered, in reference to the construction, which is to be given the Statute, regulating appeals, in Justice's Court, and the mode and manner, in which such appeal may legally be perfected in such Courts, as well as in reference to the liability of the securities, upon such appeal. As its decision, in the present case, may possibly prevent, in future, at least in cases like the present, both fraud and perjury, if it produce no other beneficial effect; I proceed to give the conclusion, to which my own mind has arrived, in relation to it, as briefly as practicable.

The language of the Statute, regulating appeals, in our Justice's Courts, is as follows :—" That from and after the passing of this Act, " the Justices of the Peace, in the respective districts, or any one or " more of them, shall have authority and jurisdiction, to hear and " determine all suits, on any liquidated demand, or account, for any " sums of money, not exceeding Thirty Dollars, by summons or war-" rant. And the said Justices are hereby authorized and empowered " to give judgment, and award execution thereon. *Provided, never-* " *theless, that either party, being dissatisfied, shall be allowed an* " *appeal, on payment of costs, and giving security, for the eventual*

[*Whelan vs. Sherron.*]

"*condemnation money, within three days after judgment, &c.*—But "no stay of execution shall be allowed, after an appeal trial, for a "longer term than twenty days ; in which case, the security on the "appeal, together with the security for the stay of execution, *shall* "*be liable for the debt and costs.*" Now it is contended, by the counsel on the part of the plaintiff in execution, that, inasmuch as the above Statute, regulating appeals in Justice's Courts, does not, on its face, prescribe, in terms, the manner and form, in which such appeal is to be entered, or the security given, for the eventual condemnation money ; therefore, the Magistrate, in the Court below, had the right to enter the same, and take the security for the eventual condemnation money, in any manner and form, he pleased. The first answer, which I have to make to this proposition, is—that so thought *not* the Magistrate himself, in the Court below, when he *wrote* the name of John Whelan, as the security of William Patterson, on appeal, *on the face of his docket.* For, by that act, he has treated the security, required by the Statute, *as a security of Record ;* and thus given us his own exposition and construction of the Statute. That this exposition and construction of the above Statute is the correct one, will, I think, be manifest, if we, for a moment, consider the nature and character of an appeal, the spirit and language of the above Statute, regulating appeals in Justice's Courts, and the cotemporaneous construction of other Statutes, in pari materia, and the practice under them. And first, what is an appeal ? Is it not the act of a party on record, whereby a judgment of a Court of Record, upon security being given, by him, as under the above Statute, for the eventual condemnation money, is permitted to transfer, or lift up, that judgment, from an inferior to a superior tribunal, either for reversal or affirmance ? If so, is it not manifest, both upon reason, and common Law principles, that the act of appealing, as well as every other act, which is required by the Law, in order to perfect that appeal, must, of necessity, be of as high a character and dignity, as the act, which is appealed from ; or, in other words, that they must be matter of record ? Now, it is true, that the Statute, regulating appeals in Justice's Courts, does not, in terms, prescribe the form, in which the security, upon an appeal from the judgment of the Justice to that of a Jury, shall be taken by him, or entered. Neither does the Statute, regulating appeals to this Court, from the Inferior Courts, or from the verdict of a Petit Jury to that of a Special Jury, in this Court.

[Whelan *vs*. Sherron.]

The language of the Statute, regulating appeals to this Court, is almost precisely the same, with that regulating appeals, in a Magistrate's Court, from the judgment of the Justice to that of the Jury. It is as follows : " That in case either party shall be dissatisfied with the " verdict of the Jury ; then, and in all such cases, either party may, " within four days after the adjournment of the Court, in which such " verdict was obtained, enter an appeal, in the Clerk's office of such " Court, (as matter of right) and if such verdict shall be obtained in " the Inferior Court, it shall be the duty of the Clerk thereof to trans- " mit such appeal, to the Clerk of the Superior Court, of the County " in which such verdict shall be obtained, who shall enter the same " on the appeal docket, which appeal shall be admitted and tried by " a Special Jury : *Provided, the person or persons, so appealing, shall,* " *previous to obtaining such appeal, pay all costs, which may have arisen* " *on the former trial, and give security, for the eventual condemnation* " *money ;* except executors or administrators, who shall not be liable " to give such security."—*Prince D.* 426. The Judges of this Court, in giving a construction to the above Statute, have uniformly held, that the act of appeal, as well as the act giving security for the eventual condemnation money, as required by the Statute, are acts of record, which must appear on the minutes of the Court; and, by a rule of this Court, they have prescribed the form of a recognizance, under seal, which is to be given, before such appeal can be legally perfected. And such is the uniform practice, in this Court. The cotemporaneous exposition of Statutes is always a safe rule of construction, to apply to similar Statutes, in pari materia. And although it would not be required, that an appeal, entered in a Magistrate's Court, to make it legal, should, verbatim et literatim, follow the form, prescribed in the rule of this Court; still, I apprehend, it should appear, on the face of the record, in the Court below, that an appeal was demanded, by the dissatisfied party, *and that a recognizance, under seal, for the eventual condemnation money,* had been taken and acknowledged, by the security, before the magistrate, as matter of record.

The security, required for the eventual condemnation money, under the above Statutes, regulating appeals in our own Courts, is precisely analagous to that security, which is required under the English Statutes, for the prosecution of a writ of error : for an appeal is but

another name for a writ of error. By the Statute 3 *James* 1. *Ch.* 8; made perpetual by the Statute 3 *Charles* 1. *Ch.* 4, *Sec.* 8, to restrain unnecessary delays of execution, it is provided, that, in actions thereon specified, no writ of error shall be allowed, unless the party, bringing the same, *with two sufficient securities,* shall first be bound, unto the party, for whom the judgment is given, *by recognizance,* to be acknowledged in the same Court, in double the sum to be recovered by the former judgment, to prosecute the said writ of error, to effect, and also to satisfy and pay, if the said judgment be affirmed, all the damages and costs, adjudged upon the former judgment, and all costs and damages, to be awarded, for the delaying of the execution; and so absolute and unconditional is this recognizance held in England, that it is an established rule, there, that such bail cannot divest themselves of their responsibility, by surrendering their principal, to the plaintiff in error, or be relieved from that responsibility, upon the ground that their principal has become bankrupt, pending the appeal.—3 *Blac. Com.* 410, note (4); *Petersd. on Bail in Error,* 470. That such also is the nature and character of the security, required to be given under our own Statutes, in cases of appeal, for the eventual condemnation money, and such their responsibility, there cannot, it seems to me, be a doubt; and especially so, if we refer to the provisions, as contained in the second section of the Act of 20th December, 1826.—*Prince D.* 46. I think, therefore, from what has now been said, it will appear sufficiently manifest, that the proposition, as contended for by the counsel, on the part of the plaintiff in execution, cannot be maintained, even in a Justice's Court, under any proper construction of the Statute, regulating appeals in that Court. I have dwelt longer on this point, than, possibly, necessity may have required; but I have deemed it important, that we should distinctly ascertain the nature and character of that security, which is required to be given, for the eventual condemnation money, in cases of appeal, under the Statute, that we may be the better prepared, to decide the question, whether, in point of Law, a power or authority, to sign the name of another, as a security upon an appeal, can be delegated by parol, so as to make the act valid and binding, upon the security? The decision of this question will determine the point, whether the Magistrate, in the Court below, when he overruled the defendant's affidavit of illegality, and sustained the execution, which had been issued against him, as a security on the

[Whelan *vs.* Sherron.]

appeal of Owen Sherron, has, or has not, committed error, in Law? Now it is true, that an agent, or attorney, may ordinarily be constituted, and appointed, by a parol authority, in the broad sense of that term, at the common Law—that is, he may be constituted such, by a verbal declaration, or by a writing not under seal, or by acts and implications. But agencies of this character are exclusively confined, upon legal principles, to commercial transactions, and others of a like character. There is, however, to this general rule, one exception of great practical utility. And it is this: That whenever any act of agency is required to be done, in the name of the principal, *under seal; the authority to do the act must be conferred, by an instrument under seal;* or, otherwise, the act done cannot be held valid, and binding upon the principal. This exception has its foundation, in the strict principles and solemnities, required by the common Law, in regard to the transfer of real estate, *and the creation of formal obligations and covenants;* and applies, as it seems to me, with all its force, to the facts of this present case.—*Story on Agency*, 49, 50; Reed *vs.* Van Ostend, 1 *Wend.* 424; Blood *vs.* Goodrich, 9 *Wendel*, 68; Hunford *vs.* McNair, 9 *Wendel*, 54; Blood *vs.* Goodrich, 12 *Wendel*, 535; Cooper *vs.* Rankin, 5 *Binn.* 613; Gordon *vs.* Bulkley, 14 *Searg. & Rawle*, 331; Harrison *vs.* Jackson, 7 *Term R.* 203. Admitting, then, that a security to an appeal can legally delegate, to another, the power and authority to subscribe his name, as such security, to a recognizance for the payment of the eventual condemnation money, which is an act to be performed of record, and under seal—which I exceedingly doubt—the question arises: can that authority be delegated, by parol, in the common Law acceptation of that term; and will the act, thus done, bind the security? From the best reflection, which I have been enabled to give this question, I am of opinion, that such power or authority cannot be delegated, by parol; but, if delegated, must be delegated by writing, under seal, or the act of the agent will not bind his principal. The authority, therefore, given in the present case (if such authority in fact ever was given) by the defendant, Whelan, to the Magistrate, James H. Wade, being, according to the testimony of said Wade, *a verbal*, and not a written, authority, under seal, in my opinion, vested in him no power, to perform the act, which he appears to have done, so as legally to bind the said Whelan, as a security on said appeal, for the eventual condemnation money; and consequently, as it appears to

H

[Whelan *vs.* Sherron.]

this Court, the presiding Magistrate in the Court below, in overruling the affidavit of the said Whelan, as to the illegality of the execution, which was issued against him, as security on said appeal, and sustaining said execution, has committed error in Law, and his judgment ought, therefore, to be reversed.

It is therefore ordered, that the judgment of the Court below, in the case of Owen Sherron *vs.* John Whelan, security of William Patterson, overruling the affidavit of illegality of said Whelan, be, and the same is hereby, *reversed;* and the said affidavit of illegality is hereby sustained, with costs. And it is further ordered, that the Clerk of this Court do certify to the said Leonidas Wylly, Esq. and James H. Wade, Esq. the judgment of this Court, in the premises.

McALLISTER & COHEN, for Plaintiff in Error.
T. E. LOYD, for Defendant in Error.